. STEELE *v.* JACKSON.

4-4826

Opinion delivered November 22, 1937.

*W. F. Denman* and *W. J. Kirby,* for appellant.
*McRae & Tompkins,* for appellees.

Humphreys, J. This suit was brought on November 13, 1936, in the chancery court of Nevada county by appellant against Leodis Jackson and others to cancel certain conveyances alleged to be clouds upon his title to a one-half interest in the south one-half of the northeast one-fourth, section 9, township 14 south, range 20 west, in said county which appellant claimed under a deed from Kate Dalrymple, Sula Dalrymple Peer and Wade Dalrymple, Jr., widow and heirs of Wade Dalrymple.

Appellees, the Jackson heirs and their grantees to whom they had made timber deeds, royalty deeds, oil leases, etc., filed answers denying that appellant acquired any interest in said 80-acre tract of land under his deed from Kate Dalrymple, Sula Dalrymple Peer and Wade Dalrymple, Jr., alleging that Wade Dalrymple, Sr., the husband of Kate Dalrymple and father of Sula Dalrymple Peer and Wade Dalrymple, Jr., conveyed his one-half interest therein to J. B. Dalrymple prior to his death in 1904, and that in 1920 J. B. Dalrymple entered

into a contract to sell said 40-acre tract to W. D. Jackson for $800 and that pursuant to said contract he went into possession thereof and that in 1922 he conveyed the 80-acre tract by warranty deed to W. D. Jackson; that since the date of the contract in 1920 the wife and children of W. D. Jackson have been in the undisputed possession thereof and are still in possession thereof claiming title thereto and that during said time they executed a mortgage thereon to J. P. Weaver for $1,451.60 and to other parties timber deeds, royalty deeds and oil leases. Appellees interposed the additional defenses of limitations and laches.

The chancery court, after hearing the evidence, dismissed appellant's complaint for the want of equity, and from the decree dismissing his complaint appellant has duly prosecuted an appeal to this court.

The evidence reflected by the record, in so far as material to a determination of the issues involved on this appeal, is as follows: W. H. Dalrymple died in 1883 owning the 80-acre tract of land in controversy which descended in equal parts to his three children, Wade Dalrymple, Milton Dalrymple and J. B. Dalrymple. Milton Dalrymple died in 1895 without heirs and his interest in said land was inherited by his two brothers, Wade and J. B. Dalrymple. J. B. Dalrymple testified that Wade Dalrymple conveyed his undivided one-half interest in said land to him upon payment by him of Milton's debts; that the deed was lost and never recorded; that he took immediate possession of the land and occupied it thereafter as his own and paid the taxes thereon until he contracted to sell it to W. D. Jackson in 1920; that W. D. Jackson went into immediate possession thereof, assessed it in his own name and paid the taxes thereon until 1928 at which time he died and that thereafter the taxes were paid by the wife and children of W. D. Jackson; that at the time he conveyed the land to W. D. Jackson, Duncan McRae examined the title and took an affidavit relative to the execution by Wade Dalrymple to him and the loss of same without having been put upon the record, but suggested that in order to perfect

the record title he should procure a deed from Kate Dalrymple, widow of Wade Dalrymple and her daughter Sula Dalrymple Peer and her son Wade Dalrymple, Jr.; that he directed Duncan McRae to prepare and mail a quitclaim deed to them at Pine Bluff for execution and return; that Duncan McRae prepared such a deed and mailed it to Kate Dalrymple at Pine Bluff, but received no answer from her; that about the same time he wrote her a letter explaining that he had sold the land to W. D. Jackson and requesting her to execute the deed and return to him, but that she did not answer his letter.

The deed which Mr. McRae mailed to her was introduced by her in evidence and is as follows:

"Quitclaim Deed

"Know all men by these presents:

"That whereas, W. H. Dalrymple died in Nevada county, Arkansas, without a will about forty years ago, seized and possessed of the following described lands, to-wit:

"North half (N½) of the northeast quarter (NE¼) of section nine (9) township fourteen (14) south, range twenty (20) west, and,

"Whereas, he left him surviving his wife, Angie Dalrymple, who died within a year after his death, and the following named children as his only heirs-at-law, to-wit:

"Wade Dalrymple, J. B. Dalrymple and Milton Dalrymple, and

"Whereas, the said Milton Dalrymple died about 21 years ago without a will and single and unmarried, without issue and shortly after his death the said Wade Dalrymple quitclaimed all his right, title and interest in and to said lands to J. B. Dalrymple, but said deed has been misplaced, lost or destroyed without being recorded, and,

"Whereas, the said Wade Dalrymple died at Illmo, Missouri, on or about the 3rd day of April, 1904, without a will, and left him surviving his wife, Kate Dalrymple, and the following named children as his only heirs-at-law, to-wit:

"Wade Dalrymple and Sula Dalrymple, and

"Whereas, the said Sula Dalrymple is now Sula Peer by marriage,

"Now, therefore, witnesseth: That we, Kate Dalrymple, Wade Dalrymple, a single person, and Sula Peer (born Dalrymple) for and in consideration of the sum of one dollar to us paid by J. B. Dalrymple, the receipt of which is hereby acknowledged, and for the purpose of perfecting title, do hereby grant, sell and quitclaim unto the said J. B. Dalrymple and unto his heirs and assigns, forever, the following lands lying in the county of Nevada and state of Arkansas, to-wit:

"North half of the northeast quarter of section nine, township fourteen south, range twenty west,

"To have and to hold the same unto the said J. B. Dalrymple and unto his heirs and assigns, forever, with all appurtenances thereunto, belonging. And I, Kate Dalrymple, widow of the said Wade Dalrymple, deceased, for and in consideration of the said sum of money and of the premises, do hereby release and relinquish unto the said J. B. Dalrymple all my right of dower and homestead in and to the said lands.

"Witness our hands on this, the 21st day of November, 1922."

The dates and the names of some of Wade's children were left blank in the deed, but at the request of Kate Dalrymple, Sula Dalrymple Peer filled in the blanks in her own handwriting. Kate Dalrymple read the deed when she received it. Kate Dalrymple kept the deed in the house and did not sign or execute it and testified that she was busy and did not have time to do so. Kate Dalrymple, also, testified that a letter which she received at the time from J. B. Dalrymple stated that he had a buyer for the land. In 1928, W. D. Jackson died, and in 1929 the mortgage he and his wife had executed was foreclosed and Weaver, the mortgagee, purchased the land at the commissioner's sale and after confirmation on December 2, 1929, he received a deed thereto from the commissioner. After J. P. Weaver received the commissioner's deed, he did not take possession of the land, but

subsequently, on March 1, 1930, conveyed the 80-acre tract by warranty deed to Mary Jackson, widow of W. D. Jackson, and she immediately recorded the deed. Mary Jackson died in 1933 leaving seven children and one grandchild and they remained in possession thereof, and they together with their grantees of oil and gas leases were made the defendants in appellant's suit and are the appellees herein. Kate Dalrymple testified that after her husband, Wade Dalrymple, died, J. B. Dalrymple continued to occupy the land holding same for her and her children and paying the taxes thereon for the use thereof and that she did not know he had sold it to W. D. Jackson until 1936 or about the time she and her son and daughter conveyed it to appellant a short time before the suit was instituted.

The evidence is undisputed that prior to the death of Wade Dalrymple, J. B. Dalrymple took possession of the 80-acre tract, rented it out, assessed it in his own name and paid the taxes thereon until 1920 and that after he contracted to sell it to W. D. Jackson, W. D. Jackson took possession thereof, assessed it in his own name and paid the taxes thereon until his death in 1928, and that after his death, Mary, his widow, paid the taxes thereon until she died and that her heirs paid the taxes thereafter until this suit was brought. It is, also, undisputed that W. D. Jackson and his widow and children have been in the actual possession of the land since 1920 and that his heirs, some of the appellees herein, are still in the actual possession thereof. It is, also, undisputed that neither J. B. Dalrymple nor W. D. Jackson ever accounted to Kate Dalrymple, her son and daughter for rents, or that an accounting for rents was ever demanded by her from them, or from the heirs of W. D. Jackson. It also appears from the record, without dispute, that before appellant purchased the one-half interest in the land from Kate Dalrymple, her son and daughter, oil had been discovered near the land and that on that account the land had become very valuable. Appellant paid Kate Dalrymple, her son and daughter $750 for the one-half interest in the land. He testified that he had ob-

tained an oil lease on the land from the Jackson heirs, thinking that they owned the fee title to the entire 80-acre tract, but that when the abstract was made he discovered that there was no deed of record showing that Wade Dalrymple had ever made a deed of his one-half interest to J. B. Dalrymple, and that in order to protect his lease he bought the undivided one-half interest from Kate Dalrymple, her son and daughter. A large number of conveyances of timber, gas and oil leases had been made by the Jackson heirs to other parties during their occupancy of the land, and in making them had warranted the title to the whole 80-acre tract. The holders of these leases were made parties defendant in this suit and are appellees herein.

There was much testimony tending to show that Jackson, his widow and heirs, had held the property claiming title to the entire 80 acres from 1920 until the suit was brought and also testimony to the effect that W. D. Jackson and his wife, Mary, had stated to others that he had bought the land thinking he was getting the title to the whole 80 acres, but that he had only gotten a deed to an undivided one-half interest therein and that he only claimed one-half interest in said land. They had both died when the suit was brought and appellees did not have the benefit of their testimony. Duncan McRae had, also, died in the meantime. J. B. Dalrymple gave a statement to appellant's attorney which indicated that prior to his sale of the land to W. D. Jackson he had held the one-half interest therein for the benefit of the widow and heirs of Wade Dalrymple and in that statement made no mention of having received a deed from Wade Dalrymple which had been lost and not recorded. His explanation as to why he had not referred to the lost deed was that the attorney left that part of the statement out saying it would not help his title.

According to the evidence detailed above appellant's right to recover a one-half interest in the 80-acre tract is dependent upon whether Kate Dalrymple, Sula Dalrymple Peer and Wade Dalrymple, Jr., his grantors, were barred from recovering same by the seven-year

statute of limitations or by laches. Even if they did not know that J. B. Dalrymple was claiming to be the sole owner of the land under a deed from Wade Dalrymple prior to J. B. Dalrymple's sale thereof to W. D. Jackson and were laboring under the impression that he was their co-tenant, they were informed definitely to the contrary by the quitclaim deed sent to them by Duncan McRae in 1922, which Kate Dalrymple read and in which blanks were filled in by Sula Dalrymple Peer at the instance of Kate Dalrymple. In that deed they were informed that J. B. Dalrymple was claiming the title to the entire 80 acres under a quitclaim deed from Wade Dalrymple. The quitclaim deed contained the following clause:

"Whereas, the said Milton Dalrymple died about 21 years ago without a will and single and unmarried, without issue and shortly after his death the said Wade Dalrymple quitclaimed all his right, title and interest in and to said lands to J. B. Dalrymple, but said deed has been misplaced, lost or destroyed without being recorded, and, * * *." This was actual notice to them that J. B. Dalrymple was claiming the land absolutely and not holding same or any interest therein as their cotenant or for their benefit. They made no inquiry concerning the matter and no effort whatever to have the interest they claim in said land set aside to them after receiving said notice. Prior to that time they had never claimed any rents from J. B. Dalrymple or any accounting to them for the rents. They paid no attention to the deed nor the letter they received from J. B. Dalrymple and Kate Dalrymple made no explanation for not doing so except that she was busy and that she did not think J. B. Dalrymple could dispose of and convey the land without her signature. Had they made any investigation they could have ascertained that J. B. Dalrymple conveyed the land by warranty deed to W. D. Jackson in 1922. W. D. Jackson recorded the deed he received immediately. They sat quietly by and allowed Jackson to assess the property in his own name, pay the taxes thereon and make conveyances carrying timber, oil

and gas leases to third parties from 1922 until 1935, or a period of about 14 years. During that period W. D. Jackson died, his wife died and Duncan McRae died. By the delay in asserting any claim to the land appellees have been deprived of the testimony of W. D. Jackson, Mary Jackson and Duncan McRae and the testimony of these parties would necessarily have shed much light upon the question of appellant's title. Appellant's grantors sat silently by without making any claim against the land during which time W. D. Jackson executed a mortgage thereon with warranty of title to J. P. Weaver which mortgage was afterwards foreclosed and later executed an oil and gas lease covering a part of the land to Warmack and Boswell and warranted the title thereto and after the death of W. D. Jackson and his wife his seven children and grandchild executed a great many conveyances all of which were filed for record and all of which carried covenants of warranty. Appellant's grantors really paid no attention to the land for about thirty-three years and took no steps for about fourteen years to recover or have their interest allotted to them after they knew that J. B. Dalrymple was claiming title to the entire 80-acre tract. Appellees have pleaded equitable estoppel as a defense to appellant's cause of action and we think the evidence is sufficient to sustain this plea. The rule of laches was well stated in the case of *Osceola Land Company* v. *Henderson*, 81 Ark. 432, 100 S. W. 896. It is as follows:

"Laches in legal significance is not mere delay, but delay that works disadvantage to another. So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly within the limits allowed by law. But when, knowing his rights, he takes no steps to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. This disadvantage may come from loss of evidence, change of title, intervention of equities and other causes: For,

where the court sees negligence on one side and injury therefrom on the other, it is a ground for denial and relief.''

The doctrine announced above was reannounced and approved in the case of *Avera* v. *Banks,* 168 Ark. 718, 271 S. W. 970, and also in *Langston* v. *Hughes,* 170 Ark. 272, 280 S. W. 374. The facts in the case of *Avera* v. *Banks, supra,* are very similar to the facts in the case at bar. Under these authorities and the facts in the instant case we think the claim of appellant is stale and that the trial court, under the doctrine of laches, was correct in dismissing appellant's complaint.

The decree is, therefore, affirmed.