W. H. GUTHREY, ET UX v. DEVA BOBO GARIS, ET AL

4675                                                      432 S.W. 2d 868

Opinion Delivered October 28, 1968

*Shaw & Shaw* for appellants.

*Hardegree & Witt* for appellees.

PAUL WARD, Justice.    This litigation involves the ownership of a parcel of land 43 feet wide and 147 feet long.    We may hereafter, for brevity, refer to this land as the "lot".    First, we set out below a brief summary of the parties and pleadings involved.

*Complaint.*    On April 3, 1967 W. H. Guthrey and wife (appellants), filed a complaint in circuit court to eject Deva Garis (appellee) from the "lot" and to recover damages.    In the complaint appellants claimed to be the owners of a parcel of land (including the "lot") described (in general) as:

> A part of the northeast quarter of the northwest quarter of section 30, township 3 south, range 25 west—being approximately 380 feet north and south and 280 feet east and west consisting of 1.72 acres.

Title to said land was deraigned through numerous conveyances since 1876.    It was alleged that appellee was occupying a house built on said "lot", and claimed same as her own property, and; that appellee had no valid title to said "lot".

*Answer.*    Appellee, after entering a general denial, deraigned her title to said "lot" as follows:

(1). Deed, dated June 18, 1942, from O. G. Cowart to I. J. Cowart, conveying all of the *NW¼ of the NE¼* (emphasis explained later) north of Main Street in Black Springs (excepting certain named lots and blocks not involved here).

(2) Deed, dated October 29, 1945 from J. I. Cowart to Dave Brunt, conveying a part of the lands described in (1) above.

(3) Deed, dated March 8, 1961, from Dave Brunt and wife to appellee conveying a part of Block 10 in Black Springs—describing by metes and bounds the "lot" in litigation—being 43' east and west and 147' north and south, being "all of lot 15 and parts of Lots 13 and 14 of said Block 10 according to plat of said town . . ."

*Decree.* Following the above pleadings the cause of action was transferred to chancery court and after the issues were presented on the pleadings and interrogatories, the trial court found and held:

1. The complaint in Ejectment is not supported by the evidence and the same is dismissed.

2. The title to "lot" in dispute is quieted in appellee.

3. The deeds in appellee's chain of title wherein the descriptions read "NW¼ of NE¼" are reformed to read "NE¼ of NW¼".

On appeal, appellants rely on four separate points for a reversal which we now discuss in the order presented.

*One.* It is here contended by appellants that the trial court erred in dismissing their complaint in Ejectment.

We find it unnecessary to discuss this point in detail. If the trial court was correct in holding that title to the parcel of land in dispute was in appellee, then appellants cannot prevail in Ejectment.

*Two.* Next, appellants are relying on a chain of title in them and their ancestors dating from 1876 until appellee began constructing a house on the "lot".

Again, and for reasons stated under point One, it is deemed unnecessary to discuss this point.

*Three.* It is our conclusion that the trial court was correct in confirming title to the "lot" in appellee. This conclusion is based on the two grounds presently discussed.

(a) As previously indicated, we, like the trial court, are unable to say the conveyances in appellants' chain of title contain a definite description to the "lot". Also, the descriptions in appellants' tax receipts are likewise indefinite. The record shows that for the years 1954 to 1966 the description was "Part of NE¼ NW¼ Sec. 30, Twp. 3 South, Range 25 West", being one-half acre.

While the description in appellee's deed is not perfectly clear, we think it is much more definite than that of appellant. It reads (transcript page 39), in essence:

Part of Block 10, Black Springs, being 43 feet by 147 feet, and includes all of lot 15; part of lots 13 and 14, and; the west 43 feet of the alley between Lot 15 on the South and Lots 13 and 14 on the North.

The above description appears to describe the parcel of land on which appellee built her home and now lives. The plat of the town of Black Springs (as attached to appellants' brief at page 103) shows: the lots in Block

10 are twenty-five feet wide east and west; there is an alley running east and west through the middle of Block 10; Lot 15 lies south of the alley and on the west side of the Block; Lot 14 lies north of Lot 15—abutting the alley; Lot 13 lies east of Lot 14, and; Block 10 (and the adjoining Blocks) are located in the NE¼ NW¼ of said Sec. 30.

It is not disputed that appellee's house is located (at least partly) on said Lot 15.

In view of the above we can not say the court erred in finding appellee received a deed to the "lot".

(b) In addition to the above, there is another ground on which the trial court must be affirmed.

The preponderance of the evidence, in our opinion, shows: When appellee bought the "lot" appellants knew about it, and they also knew appellee was going to build a residence thereon; appellants were aware of the fact, at all times, that appellee was actually building the house, yet they did not raise any objection.

Under the above state of facts the trial court was justified in holding appellants were estopped from questioning appellee's title to the "lot". See: *Pettit-Galloway Co.* v. *Womack,* 167 Ark. 356, 268 S.W. 353; *Steele* v. *Jackson,* 194 Ark. 1060, 110 S.W. 2d 1, and *R. T. Ueltzen, et al* v. *Billy Roe and Neva Roe Sowl,* 242 Ark. 17, 411 S.W. 2d 894.

*Four.* Finally, we see no merit in appellants' contention that the trial court erred in reforming the description in appellee's chain of title.

As previously pointed out the "lot" is a part of the NE¼ NW¼ of said section 30, while the reformed deeds purported to convey land in the NW¼ NE¼ of said section. The trial court held this was a mutual mistake

and accordingly made the reformation.  There is ample evidence in the record to sustain this holding. It reveals, among other things, that said Block 10 is not even located in the NW¼ of NE¼, but is in the NE¼ NW¼.

It is pointed out that Dave Brunt and others filed an intervention, raising this question of reformation, and the trial court decided in their favor.  The only objection raised by appellants to the court's action is that the proof was insufficient to sustain the same. We cannot agree.

Affirmed.

Fogleman & Byrd, JJ., concur.

John A. Fogleman, Justice.  I concur in the result solely on the basis of estoppel as to the main issue.  I also concur in that part of the opinion relating to reformation of deeds.

Conley Byrd, Justice.  I concur in the result reached on the basis of an equitable estoppel, but in doing so I must confess that appellants have a clear chain of title from the common grantor, Warren Rowton, under the following description:

"Part of the NE¼ NW¼ Sec. 30, Twp. 3 S., R. 25 West, described as follows:  Begin 1206-5/7 feet West of SW corner of Block No. 1, Town of Black Springs, thence North 4 chains and 24 links; thence West 4 chains and 24 links; thence South 4 chains and 24 links; thence East 4 chains and 24 links to beginning, *containing ½ acre, more or less.*"

The appellees and their predecessors in title hold under the following description:

"All that part of NE¼ NW¼ Sec. 30, Twp 3 S., R. 25 West, lying North of Main Street in Black

Springs, Ark., EXCEPT: - Lots 13, 14, 15, 20, 21, 22, & 23 in Block 11 and Lot 21, Block 10 and ½ *acre in Block* 10 *known as J. D. Montgomery Lot;* and S½ of Block 9, all in Black Springs, Arkansas."

The plat of Black Springs, Arkansas, filed some time shortly after 1900, shows that block 10 consists of 21 lots and the J. D. Montgomery ½ acre. Block 10 is divided by an alley running east and west, the north half of the block being lots 1 through 14, numbered from east to west. The lots in the south half of the block are numbered from west to east, with lot 15 being bordered on the west by Viola Avenue and on the east by the J. D. Montgomery property. The plat shows the J. D. Montgomery property as having 147 foot frontage on Main Street and extending north approximately the same distance.

As I read the record, which admittedly is conflicting, there is testimony from which the trial court could have found that Mr. Guthrey represented to Mrs. Garis that Dave Brunt owned the lot immediately west of the J. D. Montgomery property. In addition, there is testimony that Mr. Guthrey pointed out the boundaries of the J. D. Montgomery property and assisted Mrs. Garis' sons in measuring from the corners thereof for purposes of locating the foundation where she was going to build. There is testimony showing a boundary fence between the J. D. Montgomery ½ acre and lot 15, which appellees claim.

While it is true that the metes and bounds description in appellants' deed calls for a tract 280 ft. x. 280 ft., it is also true that the conveyances under which both they and appellees hold describe the area conveyed thereby as ½ acre. Since all the deeds in the chain of title under which appellants hold refer to the plat of Black Springs; the plat of Black Springs shows the J. D. Montgomery property which appellants claim to hold as only ½ acre with 147 feet along the south border;

there is evidence that the boundary fences were placed in accordance with the plat; and appellant represented to Mrs. Garis that Brunt owned lot 15 here involved, I conclude that the chancellor was correct in holding that appellants were estopped to deny Mrs. Garis' title.